## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF MICHIGAN

ELIZABETH A. SPALSBURY       :
                            :

    Plaintiff.                   :

v.                             :      Case No.
                              :      Jury Trial Demanded

EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC,
TRANS UNION LLC, and

    Defendant(s).
_____/

## COMPLAINT

The Plaintiff Elizabeth Spalsbury ("Plaintiff"), by and through counsel, alleges the following:

### Nature of Action

1.  Plaintiffs bring this action against the Defendants, seeking damages and equitable relief, to redress the each Defendant's separate and respective systemic violations of the Fair Credit Reporting Act  (15 U.S.C. § 1681 et seq- hereinafter, "FCRA").

### Parties

2.  Plaintiff Elizabeth A. Spalsbury ("Ms. Spalsbury") is a citizen of Michigan residing in Three Rivers, Michigan.

3.  Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio-based foreign profit corporation and credit information provider whose registered office address is in *Plymouth*, Michigan.

1

4. Defendant Equifax Information Services, LLC ("Equifax") is an Atlanta, Georgia-based foreign profit corporation and credit information provider whose registered office address is in East Lansing, Michigan.

5. Defendant Trans Union, LLC ("Trans Union") is a Delaware-based foreign limited liability company and credit information provider whose registered office address is in East Lansing, Michigan.

**Fair Credit Reporting Act**

6. The FCRA governs the conduct of consumer reporting agencies and furnishers of credit information in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

7. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. 1681(b).

8. The national consumer reporting agencies (Trans Union, Equifax and Experian) regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others. These sources (e.g., Lake Trust Credit Union) are known as "furnishers" within the credit reporting industry and under the FCRA.

9. Furnishers report credit information to the consumer reporting agencies electronically on a monthly basis using electronic formatting known as Metro 2.

10. The consumer reporting agencies take the credit information reported by these furnishers, and create consumer credit files. Credit files are updated electronically by furnishers to reflect new information regarding the reported accounts (often referred to as "tradelines" within the industry).

11. Metro 2 was developed in 1997 by the Consumer Data Industry Association (the "CDIA") to replace the Metro format which was developed in the late 1970's.

12. The "Payment History Profile" (the "Payment History Field") is a Metro 2 field that contains up to 24 months of consecutive payment activity for the previous 24 months prior to the Date of Account Information being reported. The "Current Balance" (the "Current Balance Field") is a Metro 2 field that contains the current total balance of the account.  The "Consumer Information Indicator" (the "CII Field") is a Metro 2 field that contains a value that indicates a special condition that applies to the specific consumer. One of the codes that can be used in the CII Field is code "R" which stands for "reaffirmation of debt."

13. When a consumer reaffirms a debt in bankruptcy, the furnisher is required to report the appropriate Account Status for the account along with the Consumer Information Indicator of "R", which stands for "Reaffirmation of Debt", and the account information, including the balance and payment history, as they apply going forward.

14. In general, when the consumer reporting agencies receive a dispute from consumer, the agencies investigate the dispute using an automated browser based system called the Online Solution for Complete and Accurate Reporting ("e-OSCAR"). This system was designed to provide furnishers.  Through e-OSCAR, the agencies send to the furnisher an Automated Credit Dispute Verification ("ACDV") which is supposed to

include: the information the agency is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute which the agency received from the consumer.

15. Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) the consumer reporting agency has on the consumer matches the indicative information maintained in the furnisher's records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information. The furnisher is then supposed to return the ACDV to the agency with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the agency that: (a) either the disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted". To do this the furnisher is asked to do nothing more than check a box.

16. The Defendants failure to correct their respective, demonstrably inaccurate reporting specific to the Plaintiff (along with the other FCRA violations detailed below) have caused and continue to cause Plaintiff emotional distress, impair Plaintiff's ability to obtain credit and damage her credit scores.

## Jurisdiction and Venue

17. This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1367 and 1331.

18. Venue is proper in this Court under 28 U.S.C. 1391 as all Defendants transact business in this jurisdiction.

4

**Factual Background**

19. On April 18, 2023 the Plaintiff filed for Chapter 7 bankruptcy protection in the Western District of Michigan; the case number for the relevant case is 23-00886-JTG.

20. On June 13, 2023 (ECF Docket Number 21) as a corollary to the above-referenced bankruptcy case, three separate reaffirmation agreement between the Plaintiff and First United Credit Union were filed with the Court specific to a line of credit and personal loan through the latter. As a necessary prerequisite to entry of these agreements, both the Plaintiff and an authorized representative of the Lake Trust Credit Union were required to sign off on the agreements prior to their separate filing with the Court, which they both did.

21. The Plaintiff's bankruptcy case was successfully discharged on August 9, 2023.

22. Pursuant to 11 U.S.C. 524(c)(3), an agreement between a holder of a claim and the debtor, the consideration for which in whole or in part is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if such agreement has been filed with the court and accompanied by a declaration or an affidavit of the attorney.  The subject reaffirmed debts then each survived the debtor's discharge.

23. Following her discharge, the Plaintiff undertook the necessary steps to perform a complete review of her separate and respective credit reporting history as currently set forth by Equifax, Trans Union, and Experian, making the necessary request for annual copies of each and subsequently receiving a report from Equifax dated August

16, 2023; and on each from Trans Union and Experian both dated August 17, 2023.

24. Having subsequently reviewed the credit reports provided by Equifax, Experian, and Transunion the Plaintiff unfortunately discovered that none of the three agencies were properly reporting the Lake Trust Credit Union accounts as reaffirmed and instead were falsely suggesting by way of their respective reporting (specifically the indication of $0 or no balance reported by each, along with false delinquency references and false suggestions the account was discharged through bankruptcy; reported in the negative account activity portion of the Experian Report) and that each account had falsely in fact effectively been discharged as a part of the prior Chapter 7 filing.

25. Given the clear reporting errors at issue and the definitive, pronounced negative impact that such reporting was already causing and would continue to cause by denying the Plaintiff the positive benefit to her credit rating which would logically follow from a sustained history of timely payments made upon the *reaffirmed* accounts at issue, dispute letters were then separately prepared and mailed to the attention of each individual credit reporting agency by the Plaintiff, on or around September 29, 2023 via certified U.S. Mail.

26. Specific first to co-Defendant Transunion the Plaintiff received a response dated October 14, 2023 which continued to falsely categorize each reaffirmed account with Lake Trust Credit Union in its' "Accounts with Adverse Information" section while continuing to fail to report any current balance on either of the three accounts, falsely reporting "Account Included in Bankruptcy" and in the remarks section of the report falsely indicating "Chapter 7 Bankruptcy" in the Pay Status section of each respective tradeline.

27. As to co-defendant Equifax, in response to Plaintiff's dispute Ms. Spalsbury received a response dated October 11, 2023 which showed Equifax continuing to falsely report each reaffirmed account with false dates of delinquency in March 2023 and April 2023; falsely indicating a $0.0 balance amount(s) Zero Balance, date of last payment, and/or scheduled payment amount; and continues to indicate "Bankruptcy Chapter 7 Bankruptcy Discharged" for each reaffirmed account.

28. Specific first to co-Defendant Experian the Plaintiff received a response dated October 12, 2023 which continued to falsely categorize each reaffirmed account with Lake Trust Credit Union in its' "Accounts with Potentially Negative Account Activity Information" section while continuing to fail to report any current balance on either of the three account, falsely reporting "Discharged Through Bankruptcy" and in the Status Section and failing to report positive balance and amount owed.

29. There is simply no doubt in this instance that the information currently being furnished by Experian creates a materially misleading impression that the Plaintiff discharged rather than reaffirmed her loan through Lake Trust Credit Union before the discharge of her prior Chapter 7 bankruptcy filing.

30. Aside from the clear and obvious violation of 15 U.S.C. § 1681i committed by Experian due to its' failure to respond, it remains nonetheless the case that upon information and belief the misreported items cited by the Plaintiff remain unchanged and incorrect as a result to this day.

31. Reporting the reaffirmed Lake Trust Credit Union accounts at issue as effectively possessing a current balance of $0.00 and reporting as discharged is contrary

both to the statutory provisions set forth above and the referenced discharge order entered on the Plaintiff's behalf.

32. Each of the respective credit reporting agencies maintained inaccurate information in the Plaintiff's consumer file as a result of the verification from the source of the inaccurate information and each agency's own failure to conduct a proper, reasonable reinvestigation of the inaccurate information.

33. The Defendants are mutually responsible for purposefully misreporting the account at issue as though it were subject to a Chapter 7 bankruptcy discharge and not in fact a surviving claim which continued beyond the discharge, which in turn prevented the Plaintiff from receiving the benefit of continued, reaffirmed post-discharge payments.

34. These respective reporting failures have had a debilitating effect on the Plaintiff's ability to rebuild her FICO score following the discharge of her bankruptcy and denials of credit.

35. As a result of the negative and inaccurate credit reporting, the Plaintiff's credit score continues to be adversely affected, and the Plaintiff's credit reputation was and continues to be wrongfully damaged.

36. "The duty to correct an incomplete or inaccurate report equally extends to the discovery of both inaccurate or incomplete consumer information and to the discovery of consumer information that is materially misleading." *Boggio v. USAA Fed. Saving Bank*, 696 F.3d 611, 614 (6th Cir. 2012).

37. Consumer reporting agencies pursuant to Section 1681e(b) of the Fair Credit Reporting Act are required to "follow reasonable procedures to assure maximum possible accuracy when preparing a consumer report." *Nelski v. Trans Union, LLC*, 86 F.App'x

8

840, 844 (6th Cir. 2004).   Under this section, "liability flows only from a 'failure to follow (1) reasonable procedures (2) to assume maximum possible accuracy of the information (3) concerning the individual about whom the information relates.  *Id* at 844. The reasonableness standard is "what a reasonably prudent person would do under the circumstances."  *Id* at 844.

38. The Sixth Circuit has established that the elements necessary to assert a claim under 1681e(b) involve a Plaintiff proving (1) the Defendant reported inaccurate information about the Plaintiff; (2) the Defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the Plaintiff; (3) the Plaintiff was injured; and (4) the Defendant's conduct was the proximate cause of the Plaintiff's injury.  *Nelski* at 844.

39. A credit report is "inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Poore v. Sterling Testing Systems, Inc.,* 410 F.Supp.2d 557 (E.D.Ky. 2006) See also *Dickens v. Trans Union Corp*., 18 F.App'x 315, 318 (6th Circ. 2001).

40. An FCRA violation occurs when CRAs provide information that creates a "materially misleading impression," that omits material to create "incomplete or inaccurate" information, or even when a furnisher fails to identify that a consumer has disputed her information, when the dispute is a bona fide one that "could materially alter how the reported debt is understood."  *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 617-18 (6th Cir. 2012).

41. The Plaintiff seeks equitable damages, including correction of the subject trade line from the Plaintiff's credit report, along with monetary damages, both actual,

punitive, and statutory due to the failure of the Defendants to properly modify the account information at issue, in whatever amount a jury finds Defendants liable, plus attorney fees, litigation costs, and court costs.

## COUNT I- VIOLATION OF FAIR CREDIT REPORTING ACT BY CO-DEFENDANT TRANS UNION LLC

42. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

43. Transunion also prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced a consumer report regarding each respective Plaintiff as defined under 15 U.S.C. §1681a.

44. The referenced report provided to the Plaintiff contained information about him that was false, misleading, and inaccurate.

45. By failing and/or refusing to properly investigate each Plaintiff's dispute, Transunion also willfully refused and failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff in violation of 15 U.S.C. § 1681e(b).

46. In the alternative, Transunion negligently refused and failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff in violation of 15 U.S.C. § 1681e(b).

47. After receiving the Plaintiff's consumer dispute, Transunion willfully failed to conduct a *reasonable* investigation thereof as required by 15 U.S.C. § 1681i.

48. In the alternative, Transunion negligently failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i for the foregoing reasons.

49. In this instance, it is clear and obvious that Transunion (1) reported inaccurate information about the Plaintiff by attributing a non-existent balance on reaffirmed accounts that had (and has) a current balance, (2) the Defendant either negligently or willfully failed to modify that account information and/or modified it following the Plaintiff's dispute in such a way as to only enhance the previous misreporting of the account, (3) the Plaintiff is now being injured by reporting on the account which misidentifies it as having no balance and being effectively discharged in her prior bankruptcy filing, and (4) but for the Defendant's conduct, that injury would not have occurred.  As a result, the Defendant was clearly in violation of § 1681e(b)

50. There is simply no doubt in this instance that the information currently being furnished by Transunion creates a materially misleading impression that the Plaintiff owes no current balance to the referenced reaffirmed creditors and otherwise seem to indicate that the debts have been surrendered/discharged as a part of the Plaintiff's prior bankruptcy filing when each was demonstrably reaffirmed as a part thereof instead.

51. As a direct and proximate cause of Transunion's failure to perform its' required duties under the FCRA, the Plaintiff has suffered actual damages, including denial of credit; reduced opportunity for credit; increased costs, interest, and fees for credit; along with emotional distress, humiliation, and embarrassment.

52. False information was and continues to be furnished by Transunion.

53. Upon reinvestigation, Transunion reported erroneous credit information and consciously avoided knowing that the credit information was inaccurate in violation of the FCRA, 15 U.S.C. §1681s2(b).

54. Transunion is liable to the Plaintiff by reason of its' violations of the FCRA in

an amount to be determined by a jury together with her reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT II- VIOLATION OF FAIR CREDIT REPORTING ACT**
**SPECIFIC TO CO-DEFENDANT EQUIFAX**

55. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

56. The Defendant prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced a consumer report regarding the Plaintiff as defined under 15 U.S.C. §1681a.

57. The referenced report prepared by Equifax contained information about the Plaintiffs that was false, misleading, and inaccurate, specific Lake Trust Credit Union by failing to note any current balance amount whatsoever, a date of last payment, scheduled payment amount, and/or date of last activity, and otherwise by plainly stating its' status as "Account Included in Bankruptcy" when in fact the account at issue had been reaffirmed.

58. By failing and/or refusing to properly investigate the Plaintiff's dispute, and/or subsequently altering the Plaintiff's credit report to reflect incorrect information or otherwise not making the required corrections, Equifax willfully refused and failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff in violation of 15 U.S.C. § 1681e(b).

59. In the alternative, Equifax negligently refused and failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it

reported to one or more third parties pertaining to the Plaintiff in violation of 15 U.S.C. § 1681e(b).

60. After receiving the Plaintiff's consumer dispute, Equifax willfully failed to conduct a *reasonable* investigation thereof as required by 15 U.S.C. § 1681i, such verified by the fact that Equifax failed to properly update the account information at issue.

61. In the alternative, Equifax negligently failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i for the foregoing reasons.

62. In this instance, it is clear and obvious that Equifax it is clear and obvious that Experian (1) reported inaccurate information about the Plaintiff by attributing no existing balance on accounts that have a current balance and suggesting the account was effectively discharged in bankruptcy when in fact it was reaffirmed (the natural presumption when an otherwise reaffirmed account is not categorized as such post-discharge), (2) the Defendant either negligently or willfully failed to modify that account information and/or modified it following the Plaintiffs' disputes in such a way as to only enhance the previous misreporting of the account, (3) the Plaintiff is now being injured by reporting on the account which misidentifies it as having no balance and being effectively discharged in her prior bankruptcy filing, and (4) but for the Defendant's conduct, that injury would not have occurred.  As a result, the Defendant was clearly in violation of § 1681e(b).

63. As a direct and proximate cause of Equifax's failure to perform their required duties under the FCRA, the Plaintiff has suffered actual damages, including potential denial of credit, reduced opportunity for credit, increased costs, interest, and fees for

credit, along with emotional distress, humiliation, and embarrassment.

64. Upon reinvestigation, Equifax reported erroneous credit information and consciously avoided knowing that the credit information was inaccurate in violation of the FCRA, 15 U.S.C. §1681s2(b).

65. Equifax is liable to the Plaintiff by reason of their violations of the FCRA in an amount to be determined by a jury together with her reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

<u>COUNT III- VIOLATION OF FAIR CREDIT REPORTING ACT BY CO-DEFENDANT EXPERIAN</u>

66. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

67. Defendant prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced a consumer report regarding the Plaintiff as defined under 15 U.S.C. §1681a.

68. The referenced report contained information about the Plaintiff that was false, misleading, and inaccurate.

69. By failing and/or refusing to properly investigate the Plaintiff's dispute, and/or subsequently altering the Plaintiff's credit report to reflect incorrect information or otherwise not making the required corrections, Experian willfully refused and failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff in violation of 15 U.S.C. § 1681e(b).

70. In the alternative, Experian negligently refused and failed to maintain and/or

follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff in violation of 15 U.S.C. § 1681e(b).

71. After receiving the Plaintiff's consumer dispute, Experian willfully failed to conduct a *reasonable* investigation thereof as required by 15 U.S.C. § 1681i, such verified by the fact that Experian failed to properly update the account information at issue, and more specifically by the fact that no response was forthcoming from Experian within the required thirty days from receipt of the Plaintiff's dispute.

72. In the alternative, Experian negligently failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i for the foregoing reasons.

73. In this instance, it is clear and obvious that Experian (1) reported inaccurate information about the referenced accounts of the Plaintiff, (2) the Defendant either negligently or willfully failed to provide a response to the Plaintiff's dispute within the allotted time period, (3) the Defendant either negligently or willfully failed to modify that account information and/or modified it following the Plaintiff's dispute in such a way as to only enhance the previous misreporting of the account, (4) the Plaintiff is now being injured by reporting on the account which misidentifies it, and (5) but for the Defendant's conduct, that injury would not have occurred.  As a result, the Defendant is clearly in violation of § 1681e(b)

74. There is simply no doubt in this instance that the information currently being furnished by Experian creates a materially misleading impression about the Plaintiff.

75. As a direct and proximate cause of Experian's failure to perform their required duties under the FCRA, the Plaintiff has suffered actual damages, including potential

denial of credit, reduced opportunity for credit, increased costs, interest, and fees for credit, along with emotional distress, humiliation, and embarrassment.

76. False information was and continues to be furnished by the Defendant.

77. Upon reinvestigation, Experian reported erroneous credit information and consciously avoided knowing that the credit information was inaccurate in violation of the FCRA, 15 U.S.C. §1681s2(b).

78. Experian is liable to the Plaintiff by reason of their violations of the FCRA in an amount to be determined by a jury together with her reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

## COUNT IV- DEFAMATION

79. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

80. Each credit reporting agency named in the foregoing paragraphs (Experian, Equifax, and Trans Union) separately and respectively caused to be published one or more written false statements which were intended to impeach the Plaintiff's honesty, integrity, credit worthiness, and/or reputation.

81. The Plaintiff is not a public figure.

82. The statements by each reporting agency to the public represent a slur on the Plaintiff's character, including her honesty, integrity, virtue, or reputation, as well as her credit worthiness.

83. The defamatory statements resulted in damages to the Plaintiff.

## DEMAND FOR JUDGMENT AND RELIEF

**WHEREFORE**, based upon the foregoing facts, the Plaintiff respectfully requests the following relief:

(A)   Statutory and actual damages in an amount to be determined by the Court.

(B)   Deletion or correction of any and all accounts being wrongfully reported by the Defendants.

(C)   Statutory costs and attorney fees under the FCRA.

(D)   Injunctive relief, including but not limited to correction of the account.

(E)   Compensatory and/or punitive damages.

(F)   Any other relief which the Court deems appropriate.

### Demand for Trial by Jury

Plaintiff demands trial by jury.

RESPECTFULLY SUBMITTED,

Date:  November 15, 2023

/s/ Nicholas A. Reyna
Nicholas A. Reyna (P68328)
Attorney for Plaintiff
528 Bridge St NW, Ste. 1A
Grand Rapids, MI 49504
(616) 235-4444
Nickreyna7@hotmail.com